IN UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ANTHONY L. SAXTON, | ) | CASE NO. 3:06 CV 00306 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE NUGENT |
| v. | ) | |
| | ) | MAGISTRATE JUDGE HEMANN |
| MICHAEL SHEETS, Warden, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2(b)(2).  Before the

court is Anthony Saxton's ("Saxton") petition for a writ of habeas corpus filed pursuant to 28 U.S.C.

§ 2254 on February 8, 2006.  Saxton is in the custody of Ross Correctional Institution pursuant to

a conviction for one count of aggravated murder, one count of aggravated burglary, and one count

of aggravated arson in the case of *State v. Saxton,* Case No. 99CR184 (Marion County 2000).  For

the reasons set forth below, the magistrate judge recommends that the petition be denied.

I

The state appellate court reviewing Saxton's conviction challenged in this petition described

the following facts as relevant to the case:

On Saturday, July 3, 1999, Appellant and his wife, Pamela Saxton, argued
about her refusal to leave Appellant the keys to her car while she went out of town

1

to visit family.  She left the car at her mother and daughter's house and locked the keys to the car in her mother's bedroom without telling anyone.  Thereafter, she and her mother left, leaving her daughter, Taranda Braddy, at home alone.

On Wednesday, July 7, 1999, the Marion, Ohio Fire Department was dispatched to Taranda Braddy's house in response to the fire.  Once a majority of the fire was extinguished, Taranda's body was found lying on the bed in her upstairs bedroom.  The coroner determined that she died of strangulation before the fire was set.  Investigators determined that the fire was intentionally set using gasoline as an accelerant.

Appellant arrived at the scene later that morning and was approached by investigating officers.  Thereafter, he consented to a search of his home located approximately one mile from the scene of the crime.  During the search, officers found potential evidence linking Appellant to the crimes.  Appellant was later arrested for an unrelated parole violation, and the investigation surrounding Taranda Braddy's death continued.

During the investigation, Appellant never accounted for his whereabouts between the times the crimes were committed and continually gave conflicting statements to the police.  Furthermore, an abundance of circumstantial evidence was recovered linking Appellant to the crime.  Consequently, on July 29, 1999, Appellant was indicted on one count of aggravated murder, one count of aggravated burglary, and one count of aggravated arson.

On March 8, 2000, after a two-week jury trial, Appellant was convicted on all counts.  Subsequently, Appellant filed a motion for acquittal and a motion for a new trial, which were both denied after a hearing on the motions.  On September 22, 2000, Appellant was sentenced to life imprisonment for aggravated murder, ten years imprisonment for aggravated burglary, and eight years imprisonment for aggravated arson; all terms to be served consecutively.

*State v. Saxton,* 2002 WL 359469, 2002-Ohio-1024 at pages 3-5 (Ohio App. 3 Dist.) (March 7, 2002).

On March 21, 2000, Saxton filed a motion for new trial arguing that the conviction was not

supported by sufficient evidence and was the product of prosecutorial misconduct.  Respondent filed

an opposition brief to this motion on March 24, 2000.  Thereafter, Saxton filed a supplemental

memorandum in support of the motion for new trial on March 31, 2000.  Saxton argued in the

supplemental memorandum that Donna Bonds ("Bonds") spent the evening with Saxton during the

night of the crimes for which Saxton was convicted.  The trial court denied Saxton's motion for new

trial on July 6, 2000.

Saxton, represented by counsel, filed a timely notice of appeal of his conviction.  He raised

nine assignments of error in his appellate brief:

A.   DEFENDANT-APPELLANT'S CONVICTION IS CONTRARY TO THE
MANIFEST WEIGHT OF EVIDENCE.

B.   THE RECORD CONTAINS INSUFFICIENT EVIDENCE TO SUPPORT
DEFENDANT-APPELLANT'S CONVICTION.

C.   THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-
APPELLANT BY ALLOWING THE TESTIMONY OF MICHELLE YEZZO
REGARDING THE PAPER TO PAPER TRANSFER EXPERIMENT.

D.   THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-
APPELLANT BY ALLOWING THE TESTIMONY OF PAMELA SAXTON
ABOUT AN ALLEGED THREAT TO SET THE HOUSE ON FIRE.

E.   PROSECUTORIAL MISCONDUCT RENDERED DEFENDANT-APPELLANT'S
TRIAL FUNDAMENTALLY UNFAIR IN VIOLATION OF THE
CONSTITUTIONS OF OHIO AND THE UNITED STATES.

F.   DEFENDANT-APPELLANT RECEIVED PREJUDICIALLY INEFFECTIVE
ASSISTANCE OF COUNSEL IN VIOLATION OF HIS SIXTH AND
FOURTEENTH AMENDMENT RIGHTS, AS WELL AS HIS RIGHTS UNDER
SECTION 10, ARTICLE 1, OHIO CONSTITUTION.

E.[sic] THE COMBINATION OF THE AFOREMENTIONED ERRORS ARE
SUFFICIENT TO CALL INTO QUESTION THE VALIDITY OF THE VERDICT,
PREVENTING THE APPELLANT FROM OBTAINING A FAIR TRIAL
GUARANTEED BY THE FIFTH AND SIXTH AMENDMENTS TO THE U.S.
CONSTITUTION AS MADE APPLICABLE TO THE STATES BY THE
FOURTEENTH AMENDMENT, AND ARTICLE ONE, SECTIONS TEN AND
SIXTEEN OF THE OHIO CONSTITUTION, REQUIRING REVERSAL OF THE
APPELLANT'S CONVICTION AND A NEW TRIAL.

F.[sic] THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-
APPELLANT BY DENYING DEFENDANT-APPELLANT'S POST TRIAL
MOTION FOR ACQUITTAL.

G.     THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT BY DENYING DEFENDANT-APPELLANT'S MOTION FOR NEW TRIAL.

The state court of appeals affirmed Saxton's conviction on March 7, 2002.  Saxton, through new

counsel, filed a timely appeal of the judgment of the appellate court to the Ohio Supreme Court on

April 19, 2002.  In his memorandum in support of jurisdiction, he asserted the following five

propositions of law:

FIRST PROPOSITION OF LAW:

A trial court errs in violation of the right to due process under the Fifth and Fourteenth
Amendments to the United States Constitution when it enters a judgment against the manifest
weight of the evidence and/or when the record contains insufficient evidence to support a
conviction.

SECOND PROPOSITION OF LAW:

A criminal conviction is entered in violation of the Constitutions of Ohio and the United States
where misconduct of the prosecutor renders the proceeding fundamentally unfair.

THIRD PROPOSITION OF LAW:

A criminal defendant is constitutionally entitled to the vigorous and effective assistance of
counsel under the Sixth and Fourteenth Amendments.

FOURTH PROPOSITION OF LAW

A combination of errors including the cumulative effect of presenting numerous irrelevant
witnesses is sufficient to call into question the validity of the verdict, preventing the appellant
from obtaining the fair trial guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the
Constitution.

FIFTH PROPOSITION OF LAW

A trial court errs when it dodges its duty to conclusively rule on a post trial motion for acquittal,
thus depriving a criminal defendant the right to due process of law as guaranteed by the Fifth
and Fourteenth Amendments of the United States Constitution.

SIXTH PROPOSITION OF LAW

4

A trial court errs in violation of the right to due process under the Fifth and Fourteenth Amendments to the United States Constitution when it improperly denies a criminal defendant's motion for a new trial.

On July 3, 2002, the Ohio Supreme Court denied Saxton's leave to appeal and dismissed the appeal as not involving any substantial constitutional question.

On August 20, 2001, Saxton filed in the trial court a petition for post-conviction relief pursuant to Ohio Rev. Code § 2953.21, claiming that trial counsel was ineffective in investigating the case by not examining certain physical evidence. On June 25, 2003, the trial court denied the petition without an evidentiary hearing. The court determined that any issue of ineffective assistance of counsel had been addressed, Saxton had no substantive grounds for relief, and an evidentiary hearing was not required because all the issues had been resolved by the record.

On July 23, 2003, Saxton filed a notice of appeal of the trial court's denial of his petition for post-conviction relief. In his brief in support of his appeal, Saxton asserted one assignment of error:

ASSIGNMENT OF ERROR

After originally ordering that a hearing be held on Mr. Saxton's post-conviction petition, the trial court erred in violation of R.C. 2953.21 by dismissing the action and depriving Mr. Saxton of his right to due process of law and the effective assistance of counsel as guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

On February 23, 2004, the state appellate court reversed the trial court's denial of Saxton's petition and remanded the matter for further proceedings. Respondent filed a motion for reconsideration, and Saxton opposed this motion. On April 14, 2004, the state appellate court granted reconsideration and vacated its reversal of the trial court's denial of post-conviction relief. The state appellate court affirmed the trial court's denial of post-conviction relief on July 6, 2004.

On August 20, 2004, Saxton filed a notice of appeal in the Ohio Supreme Court. In his

5

memorandum in support of jurisdiction, Saxton raised two propositions of law:

> **Proposition of Law I:** Summary judgment is not appropriate on a post-conviction petition when the petition sets forth a colorable claim that trial counsel was constitutionally ineffective.

> **Proposition of Law II:** A trial court does not have authority to consider a motion for summary judgment on a post-conviction petition filed outside the 20 days allowed by R.C. 2953.21(D).

On November 10, 2004, the state supreme court declined jurisdiction and dismissed Saxton's appeal

as not involving any substantial constitutional question.

Saxton filed a petition for a federal writ of habeas corpus in this court on February 8, 2006,

raising five grounds for relief:

> Ground 1:    Anthony Saxton was denied his rights to due process and a fair trial, guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, when there was insufficient evidence to support his convictions for aggravated murder, aggravated arson, and aggravated burglary, and the trial court did not conclusively rule on Mr. Saxton's post-trial motion for acquittal.

> Ground 2:    Anthony Saxton was denied his rights to due process and a fair trial, guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, due to prosecutorial misconduct.

> Ground 3:    Anthony Saxton was denied his right to the [sic] his right to due process, guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution, when the trial court improperly denied his motion for a new trial.

> Ground 4:    Anthony Saxton was denied his right to the effective assistance of trial counsel, guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution.

> Ground 5:    Mr. Saxton was denied his rights to due process of law and the effective assistance of counsel, as guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, when the trial court dismissed his colorable post-conviction petition without holding a hearing.

Respondent filed a Return of Writ/Answer on May 9, 2006 (Docket # 10).  Saxton filed a Traverse

6

on September 22, 2006 (Docket # 22).  On September 25, 2006, respondent filed a motion to dismiss

Saxton's petition for failure to file a timely Traverse (Docket # 23).  The court overruled

respondent's motion on November 20, 2006.  Thus, the petition is ready for decision.

II

A.    *Jurisdiction*

Writs of habeas corpus may be granted by a district court within its respective jurisdiction:

> Where an application for a writ of habeas corpus is made by a person in custody under the judgment and sentence of a State court of a State which contains two or more Federal judicial districts, the application may be filed in the district court for the district within which the State court was held which convicted and sentenced him and each of such district courts shall have concurrent jurisdiction to entertain the application.

28 U.S.C. § 2241(a) and (d).  Saxton was sentenced by the Court of Common Pleas of Marion

County, Ohio.  Saxton filed his writ of habeas corpus in the Northern District of Ohio and raises

claims regarding the constitutionality of his incarceration under 28 U.S.C. § 2254.  This court has

jurisdiction over Saxton's petition.

B.    *Evidentiary hearing*

The habeas corpus statute authorizes an evidentiary hearing in limited circumstances when

the factual basis of a claim has not been adequately developed in state court proceedings or when

the state proceedings were seriously defective or inadequately recorded.  28 U.S.C. § 2254(e)(2).

There is no need for an evidentiary hearing in the instant case.  All of Saxton's claims involve legal

issues which can be independently resolved without additional factual inquiry.

C.    *Exhaustion of state remedies*

A state prisoner must properly exhaust available state remedies prior to seeking review of

conviction via federal habeas corpus.  28 U.S.C. § 2254(b) and (c); *Castillo v. Peoples,* 489 U.S.

346, 349 (1989); *Riggins v. Macklin,* 936 F.2d 790, 793 (6th Cir. 1991). The exhaustion requirement is properly satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all the petitioner's claims. *Manning v. Alexander,* 912 F.2d 878, 881-83 (6th Cir. 1990).

A petitioner must fairly present any claims to the state courts in a constitutional context properly to exhaust state remedies. *Anderson v. Harless,* 489 U.S. 4 (1982); *Picard v. Connor,* 404 U.S. 270 (1971); *Shoultes v. Laidlaw,* 886 F.2d 114, 117 (6th Cir. 1989). "[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied." *Picard,* 404 U.S. at 275; *see also Harris v. Reeves,* 794 F.2d 1168, 1174 (6th Cir. 1986).

Because Saxton has no remaining state remedies for his claims, Saxton has satisfied the requirement for exhaustion.

D.      *Procedural default*

Respondent argues that Saxton has procedurally defaulted several of his claims for relief. Procedural default occurs when a petitioner fails to present fairly his constitutional claims to the highest state court in a federal constitutional context. *Anderson,* 489 U.S. 4; *Picard,* 404 U.S. 270. Reasons of federalism and comity generally bar federal habeas corpus review of "contentions of federal law . . . not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure." *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977). When a petitioner

> has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson,* 501 U.S. 722, 750 (1991).

If the state argues that a petitioner has procedurally defaulted, the court must conduct a four-step analysis to determine whether the petitioner has indeed defaulted and, if so, whether the procedural default may be excused:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule . . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction . . . . Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim . . . . This question generally will involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims . . . . [Fourth, if] the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate . . . that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986).  A default will also be excused if petitioner demonstrates that not excusing the default "will result in a fundamental miscarriage of justice."

*Coleman,* 501 U.S. at 750.

Respondent contends that Saxton had procedurally defaulted the following claims:

(1) <u>Ground two, claim three</u>: The prosecutor improperly intimidated Bonds, Saxton's alibi witness for his motion for a new trial.

(2) <u>Ground three</u>:  Saxton was denied due process and a fair trial when the trial court improperly denied his motion for new trial based on newly discovered evidence.

(3) <u>Ground four, claims one and three</u>:  Saxton was denied effective assistance of counsel when: (a) counsel failed sufficiently to attack the State's forensic evidence, and (b) counsel failed to object to  prosecutorial misconduct throughout the trial.

*1.     Alleged prosecutorial intimidation of Bonds*

Respondent argues that Saxton has procedurally defaulted his third claim in ground two because he failed to present this as a distinct claim of prosecutorial misconduct on direct appeal.

Saxton argues that this claim was not defaulted because it was presented to the state appellate court under the assignment of error dealing with the denial of Saxton's motion for a new trial.

In support of his motion for a new trial, Saxton mentioned in passing that Bonds was intimidated by the prosecutor. However, this claim was not raised in the assignment of error relating to prosecutorial misconduct in the state appellate court. Saxton briefly alludes to this allegation in his state appellate court brief in support of a motion for new trial: "However, the Defendant did not know, and could not have discovered through due diligence what Donna Bonds would say, especially in light of the alleged harassment and intimidation by the State." (Respondent's Exhibit 21, p. 15). Saxton failed to raise prosecutorial intimidation, therefore, as a distinct constitutional claim in the state appellate court. Therefore, Saxton has procedurally defaulted this claim.

Saxton contends cause and prejudice excuse his procedural default of the claim of prosecutorial intimidation. Saxton claims that he received ineffective assistance of appellate counsel when counsel failed to raise this meritorious constitutional challenge to the alleged prosecutorial misconduct.

Ineffective assistance of appellate counsel may serve as cause for a procedural default provided that this claim is not itself procedurally defaulted or if cause and prejudice for such default exists. *Edwards v. Carpenter,* 529 U.S. 446, 453 (2000). The standard for determining whether petitioner's counsel was ineffective is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *see also Groseclose v. Bell*, 130 F.3d 1161, 1167 (6th Cir. 1997). A claim of ineffective assistance of counsel has two components:

10

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687; *see also Groseclose*, 130 F.3d at 1167.

The first prong of this test, showing deficient performance, is an objective one: "[T]he proper standard for attorney performance is that of reasonably effective assistance. . . . When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness," as judged by "prevailing professional norms." *Strickland*, 466 U.S. 687-88; *see also Groseclose*, 130 F.3d at 1167. Scrutiny of counsel's performance is highly deferential to avoid second-guessing an adverse decision. *Strickland*, 466 U.S. at 689; *see also Groseclose*, 130 F.3d at 1167. The petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Groseclose*, 130 F.3d at 1167. A court reviewing counsel's performance "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable. . . ." *Id.* at 690-91 (1984); *see also Groseclose*, 130 F.3d at 1167-6.

The second prong of the test for ineffective assistance of counsel is whether the error prejudiced petitioner:

11

> An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.  The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding.  Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution.

*Strickland*, 466 U.S. at 690-91 (citations omitted); *see also Groseclose*, 130 F.3d at 1168.  Further "the burden rests on the accused to demonstrate a constitutional violation." *United States v. Cronic*, 466 U.S. 648, 658 (1984).  Showing a constitutional violation requires showing that "counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *Nix v. Whiteside*, 475 U.S. 157, 175 (1986). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).  A reviewing court must ask itself  "whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695; *see also Groseclose*, 130 F.3d at 1168.

Appellate counsel need not raise every possible issue on appeal in order to render effective assistance of counsel.  *State v. Burke,* 97 Ohio St. 3d 55, 57, 2002-Ohio-5310, 776 N.E.2d 79, 81; *see also Jones v. Barnes,* 463 U.S. 745, 749 (1983).  "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Barnes,* 463 U.S. at 749.

Saxton has the burden of proving that ineffective assistance of counsel excuses his procedural default because counsel's performance was objectively deficient and because the deficient performance prejudiced him.  Saxton does not show that he was prejudiced by the allegedly

deficient performance of his appellate counsel.  Saxton fails, therefore, to show that ineffective assistance of counsel should excuse his procedural default.  Nor does Saxton show that a miscarriage of justice would result if his claim of prosecutorial misconduct is not heard.  For these reasons, the magistrate judge recommends that the court find that Saxton has procedurally defaulted ground two, claim three, as it relates to the alleged prosecutorial intimidation of Bonds.

      2.     *Denial of due process for failing to receive a new trial based on newly discovered evidence*

Respondent also argues that Saxton has procedurally defaulted his due process claim in ground three relating to the denial of a new trial based on newly discovered evidence.  Saxton argued in the state appellate court that his motion for a new trial should have been granted because of newly-discovered evidence and improper statements made by the prosecutor during closing argument.  Saxton's alleged newly discovered evidence was Bonds' testimony that she was with Saxton during the time he allegedly committed the crimes.  Respondent contends that Saxton failed to argue in the state court that the denial of his motion for a new trial on the grounds of newly-discovered evidence was a due process violation.

Saxton, indeed, did not argue in the state court that the denial of his motion for a new trial on the grounds of newly-discovered evidence was a due process violation.  He argued only that the denial of his motion violated Ohio law.  Because Saxton failed to present this claim to the state courts in a constitutional context, he has procedurally defaulted this claim.

Saxton argues that cause and prejudice excuse his procedural default of his claimed violation of due process.  Saxton contends he received ineffective assistance of counsel when his appellate attorney failed to raise a meritorious violation of due process because the trial court denied his

13

motion for a new trial.

Saxton failed to present to the state courts his claim that appellate counsel was ineffective for failing to argue that the denial of his motion for a new trial on the grounds of newly-discovered evidence was a due process violation. Having failed to present this claim of ineffective assistance of appellate counsel to the state courts, he may not use that claim as cause to excuse his procedural default. *Edwards*, 529 U.S. at 453. Saxton also fails to show that a fundamental miscarriage of justice would result if the court does not excuse his procedural default. For these reasons the magistrate judge recommends that the court find that Saxton has procedurally defaulted his third ground for relief, that he was denied due process when the trial court denied his motion for a new trial on the grounds of newly-discovered evidence.

C.    *Ineffective assistance of counsel for failing to attack the state's forensic evidence*[1]

Respondent contends that Saxton has procedurally defaulted his claim that trial counsel was ineffective for failing sufficiently to attack the state's forensic evidence. Respondent contends that Saxton failed to present this claim to the state appellate court. Saxton insists that this claim has not been defaulted because he raised the claim in a timely filed post-conviction petition.

Saxton filed a timely post-conviction motion, and he fairly presented in both the state appellate court and the state supreme court in a constitutional context the claim of ineffective assistance of counsel for failure to attack the state's forensic evidence. Therefore, Saxton has not defaulted this claim. Thus, the magistrate judge recommends that the court consider the merits of the claim.

---

[1]Saxton withdrew the claim of ineffective assistance of counsel relating to prosecutorial misconduct in his Traverse.

14

III

The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA") altered the standard of review that a federal court must apply when deciding whether to grant a writ of habeas corpus.  As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under the current deferential standard of review, a writ of habeas corpus may issue only if the state court's decision is contrary to clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence.  *Williams v. Taylor,* 529 U.S. 362, 379-90 (2000); *Miller v. Francis,* 269 F.3d 609, 613-14 (6th Cir. 2001).  Law is "clearly established" only by holdings of the Supreme Court, not its dicta, and the law must be clearly established at the time of the petitioner's conviction.  *Harris v. Stovall,* 212 F.3d 940, 943-44 (6th Cir. 2000).

Courts must give independent meaning to the phrases "contrary to" and "unreasonable application of" in §2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court.  Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) *"contrary to* . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) *"involved an unreasonable application of* . . . clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams,* 529 U.S. at 405 (emphasis added by the quoting court).  A decision is "contrary to" clearly established federal law if it reaches a conclusion opposite to that reached by Supreme Court holdings

15

on a question of law or if it faces a set of facts materially indistinguishable from relevant Supreme Court precedent and still arrives at an opposite result. *Id.* "A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases." *Id.* A decision involves unreasonable application of federal law only if the deciding court correctly identifies the legal principle at issue and unreasonably applies it to the facts of the case at hand. *Doan v. Brigano,* 237 F.3d 722, 729-31 (2001). If a court fails to identify the correct legal principal at issue, the "unreasonable application of" clause does not apply. *Id.* at 730.

"[A] determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). The petitioner, however, may rebut "the presumption of correctness by clear and convincing evidence." *Id.* The magistrate judge will consider Saxton's remaining claims under the deferential standard of review accorded the state court's determination of a prisoner's constitutional claims.

A.    *Ground one:  Insufficiency of evidence*

Saxton claims that there was insufficient evidence presented at trial to prove that he committed any of the acts necessary to support his conviction and that the trial court did not rule properly on his post-trial motion for acquittal. Respondent denies these contentions.

When faced with a claim that the petitioner's conviction is supported by insufficient evidence, the petitioner is entitled to relief if it is found after viewing the evidence of the trial in the light most favorable to the prosecution that "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 324 (1979). Furthermore, a jury

may give the same weight to circumstantial evidence and direct evidence in making its determination of guilt or innocence. *Holland v. United States,* 348 U.S. 121, 140 (1954); *United States v. Sherlin,* 67 F.3d 1208, 1214 (6th Cir. 1995).

The state appellate court reviewing Saxton's appeal made the following findings of fact and law:

Testimony at trial revealed that the victim died as a result of strangulation before the fire was set. The coroner testified that while the precise time of the victim's death could not be accurately pinpointed due to the burn damages to the body, evidence revealed that the victim was killed between 2:00 a.m. and 6:00 a.m. Arson investigators testified that the fire was intentionally set with a gasoline accelerant based upon the burn patterns found in the upstairs of the house, a gas can found at the top of the stairs, and the samples of the upstairs carpet that tested positive for gasoline. Testimony also indicated that there was no forced entry into the house and nothing was taken from the premises.

Less than seven hours after the fire was reported, Appellant gave investigators consent to search his home. In the upstairs bathroom, officers found several articles of clothing soaking in the bathtub. Testimony revealed that the clothes included two pairs of men's underwear, a pair of shoes, a t-shirt, a jacket, a pair of denim shorts, and a yellow mesh outfit consisting of a pair of shorts and a shirt. Officers testified that they smelled gasoline emanating from the tub and the smell of a strong detergent. Next to the tub, officers found an almost completely empty bottle of Purex. Testimony indicated that Appellant told them the clothes had been in the tub since he worked at the county fair dismantling rides in the late hours of July 4th to the early morning hours of July 5th.

Results of scientific testing revealed that traces of gasoline were present on either the denim shorts or the shoes. Which specific item contained the gasoline could not be determined because those articles were packaged together and were possible cross contaminated. On July 13th, Appellant told the police that the denim shorts were soaking in the bathtub because he accidentally had diarrhea while wearing them, although the state's scientific testing revealed no traces of feces, and Appellant also states that he may have washed his hands with gasoline from his neighbor after working at the fair. Neither of these statements were given to police in any prior interviews with Appellant, and in prior statements Appellant specifically stated that no gasoline would be found on his clothes.

17

Investigators also discovered that one of the shoes found in the bathtub had a perfectly transferred impression of a magazine advertisement on its sole. The magazine was later confiscated from Appellant's home. The advertisement that transferred to the shoe was located in an issue that did not arrive in Marion until Tuesday, July 6th, which contradicted Appellant's statement that the clothes and shoes had been in the bathtub since the early morning of July 5th. Witnesses also indicated that Appellant had worn the yellow outfit and the shoes found in the tub the day before the murder.

The first fire and police personnel who arrived at the scene of the crime in the morning hours of July 7th noticed a single track in the dew of the grass, apparently left by a bicycle, that led from the front of the house to the dirt alley behind the house. The only break in the track was over a portion of the driveway located on the side of the residence. Later that day, a stolen bicycle was recovered four houses away from Appellant's house, and plaster casts of tire tracks made in the alley running behind the victim's house closely resembled one of the tires on the stolen bike and did not match any of the approximately 125 bicycles that were in the custody of the Marion Police Department at the time of the murder. Further testimony indicated that the bicycle was stolen approximately half-way between Appellant's house and the scene of the crime and was stolen sometime after 11:00 p.m. on July 6th and deposited near Appellant's house before 6:00 a.m. on July 7th. Moreover, a blue cotton fiber consistent with denim material was found on the seat of the bicycle, and an eyewitness saw a black male riding a bicycle at 5:50 a.m. in the direction of Appellant's home; however, the witness could not identify Appellant and states that the man on the bike had on long pants.

Appellant's wife, Pamela Saxton, testified that she and Appellant had a heated argument over her prohibiting Appellant's use of her car while she was out of town. Appellant's statement to the police corroborated this testimony. She indicated that when Appellant realized that the car would be left at the victim's house, he threatened to blow up the car and burn down the house. Her testimony also revealed that Appellant was more angry than she had ever seen him. Pamela further stated that Appellant had previously never washed his clothes in the bathtub aside from occasionally using the bathtub to wash underwear.

During the course of the investigation, Appellant never accounted for his whereabouts during the hours of 3:00 a.m. to 6:00 a.m. on July 7th, the times between which the crimes were committed. Appellant initially told police that he was in bed at 2:30 a.m. and was then awakened by his mother's arrival around 3:00 a.m., after which they sat up talking. Thereafter, Appellant told police that he had left the house to make a phone call to his girlfriend around 3:00 a.m. and missed the arrival of his mother who was waiting in her rented U-Haul truck. These statements were not given until after the police told him that his prior statement indicating that he called his girlfriend from his house on the night of the murder did not correlate with the fact that he has a long

18

distance block on his home phone.  The telephone records from the pay phone he used indicated that the call was placed at 2:51 a.m. on July 7th.  Appellant also initially told another witness that on the night of the crime he had gone to Cleveland to pick up his mother and drove her back to Marion.  This was refuted by the testimony of a police officer who gave Appellant's mother directions to Appellant's house at around 3:00 a.m. on the morning the crimes were committed.  Pamela Saxton testified that Appellant originally stated that his mother was outside waiting in the U-Haul truck until 6:00 a.m. but later claimed that he let her in by 4:00 a.m.  Pamela also indicates that several months after the crime Appellant asserted for the first time that another woman was with him at his house on the night of the crime, and she left out the back door while Appellant was letting his mother in the front door; however, no testimony at trial corroborated this account of events.

Another state witness testified to a statement made by Appellant, which inferred that Appellant knew facts about the case that only the perpetrator could have known.  Following the murder, Appellant stated to a friend over the phone that the victim was strangled before the fire was set; however, this statement was made before police had publicly announced the cause of death.  The investigating officer monitoring this phone conversation did not know the cause of death at that time.  Appellant claims that he heard the information from a cell-mate who was told the cause of death from one of the investigating officers.

Based upon the foregoing evidence presented by the state, we find that a rational trier of fact could have concluded that Appellant committed the crimes for which he was convicted beyond a reasonable doubt.

*Saxton,* 2002 WL 359469, at 6-8.

Saxton fails to demonstrate by clear and convincing evidence that the state court erred in finding that a rational finder of fact could have concluded beyond a reasonable doubt that he had committed the crimes for which he was convicted.  Absent such a showing, Saxton's claim of insufficient evidence is without merit.  Therefore, the magistrate judge recommends the court deny Saxton's first ground for relief.

B.    *Ground two:  Alleged prosecutorial misconduct*

In his second ground for relief, Saxton claims that prosecutorial misconduct throughout his

19

trial abridged his rights to due process and a fair trial in violation of the Fifth and Fourteenth Amendments to the United States Constitution.[2]

Saxton argues that the prosecutor engaged in prosecutorial misconduct during closing argument. "The touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips,* 455 U.S. 209, 219 (1982).  The aim of due process "is not punishment of society for the misdeeds of the prosecutor but the avoidance of an unfair trial to the accused." *Id.* (citations omitted).  To obtain habeas relief, a petitioner must show that prosecutorial misconduct "so infected that trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright,* 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637 (1974));  *see  also United States v. Young,* 470 U.S. 1, 11-12 (1985) (holding that habeas relief may be granted only if the prosecutor's conduct was so egregious as to render the petitioner's trial fundamentally unfair).  Ultimately, a petitioner must show that a trial error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993).

In support of his argument, Saxton relies on *Berger v. United States,* 295 U.S. 78, 88 (1935), which suggests that prosecutors must avoid insinuations and assertions that are calculated to mislead the jury.  In *Berger* the Supreme Court found that the prosecutor's statements in closing argument were so prejudicial that a new trial was warranted.  *Berger,* 295 U.S. at 78.  The *Berger* Court stated, "[W]e have not here a case where the misconduct of the prosecuting attorney was slight or

---

[2]In his petition for a writ of habeas corpus, Saxton argued that the prosecutor's failure to disclose that Pamela Saxton would testify about an alleged threat made by Saxton amounted to prosecutorial misconduct.  Saxton withdrew this claim in his Traverse.

confined to a single instance, but one where such misconduct was pronounced and persistent, with a probable cumulative effect upon the jury which cannot be disregarded as inconsequential." *Id.* at 84.

The prosecutor in Saxton's trial stated the following in closing argument:

You see both sides have an opportunity to subpoena witnesses in this case and both sides exercised that option to do that.  If there's anyone to help account for this Defendant's presence, you can bet the Defendant would subpoena them in here.

Saxton argues that the prosecutor's comment shifted the burden of proof and insinuated that he must have committed the crime because he purportedly lacked a solid alibi.

The state appellate court found the following regarding Saxton's claim of prosecutorial misconduct:

Finally, Appellant argues that the State also made improper statements during its rebuttal closing argument.  Appellant objected to the following statement: "You see both sides have an opportunity to subpoena witnesses in this case and both sides exercised that option to do that.  If there's anyone to help account for this Defendant's presence, you can bet the Defendant would subpoena them in here."

The Ohio Supreme Court has held that the State is not prevented from commenting upon the failure of the defense to offer evidence in support of its case.  Consequently, comments that a witness other than the accused did not testify are not improper.  As such, the State's comments did not constitute prosecutorial misconduct.

For these reasons, we overrule Appellant's fifth assignment of error.

*Saxton,* 2002 WL 359469, at 12 (citations omitted).

Saxton fails to show how the prosecutor's lone statement amounts to constitutional misconduct.  Furthermore, Saxton's case is distinguishable from the facts in *Berger* because the prosecutor in that case made many improper comments throughout the trial, whereas in the instant case, Saxton cites only one allegedly improper comment.  Even if the comment made by the

21

prosecutor was improper, this alleged impropriety exactly the type that the *Berger* court suggests does not warrant relief as it was confined to a single statement.

Saxton fails to demonstrate by clear and convincing evidence that the state court erred in finding that the prosecutor's comments in closing argument were improper.  As a result, the magistrate judge recommends that the court deny Saxton's second ground for relief as it relates to prosecutorial misconduct.

C.      *Ground three:  Alleged improper denial of motion for a new trial*

Saxton argues in his third ground for relief that he was deprived of due process when his motion for a new trial was improperly denied by the court.  Saxton contends that his motion for new trial should have been granted because of a statement made by the prosecutor in closing argument. The state appellate court found the following relating to Saxton's claim that he should have been granted a new trial due to prosecutorial misconduct:

> The Ohio Supreme Court has held that the State is not prevented from commenting upon the failure of the defense to offer evidence in support of its case.  Consequently, comments that a witness other than the accused did not testify are not improper.  As such, the State's comments did not constitute prosecutorial misconduct.  For these reasons, we overrule Appellant's . . . assignment of error.

*State of Ohio v. Saxton,* Ohio App. LEXIS 1020, *12, (Ohio App. 3 Dist.) (March 7, 2002) (footnotes omitted).

Saxton fails to demonstrate by clear and convincing evidence that the state court erred in finding that Saxton was not deprived of due process by denying his motion for a new trial based on the prosecutor's statement.  Absent such a showing, Saxton's claim of prosecutorial misconduct is without merit.  Therefore, the magistrate judge recommends the court deny Saxton's third ground

for relief.

D.       *Ground four:  Alleged ineffective assistance of trial counsel*

Saxton contends in his fourth ground for relief that he received ineffective assistance of

trial counsel in violation of his Sixth Amendment rights when counsel failed to (1) sufficiently

attack the state's forensic evidence, (2) to procure witnesses for the hearing on the motion for a

new trial, and (3) to object to prosecutorial misconduct throughout the trial.[3]  Respondent argues

that Saxton fails to demonstrate prejudice from the allegedly deficient performance of trial

counsel.

*(1)       Counsel's failure sufficiently to attack the state's forensic evidence*

Saxton contends that trial counsel was ineffective in failing to investigate the state's evidence

relating to the gasoline found in the water in which Saxton's clothing was recovered.  Saxton further

argues that counsel was ineffective in failing to investigate the credentials of Larry Dehus, the expert

witness retained on Saxton's behalf.

The state appellate court found the following in Saxton's appeal for post-conviction relief:

> In support of his petition, Saxton submitted the affidavit of Dr. Jay Siegel, a
> professor of forensic science at Michigan State University.  In his affidavit, Dr. Siegel
> stated that detergent diffuses gasoline and that this diffusion effect, given the facts of this
> case and the method by which the clothes were collected by the police, would render the
> likelihood that the shoes and/or denim shorts had gasoline been on them when placed in
> the tub with the other items highly improbable.  In short, Dr. Siegel opined that gasoline
> would most likely have been discovered in the water and other articles of clothing if
> gasoline were on the shoes and shorts at the time they were put in the tub because the
> detergent would have broken down the gasoline, dispersing it into the water.  Dr. Siegel

_____

[3]Saxton withdrew in his Traverse a claim that he was denied effective assistance of
counsel for failing to object to prosecutorial misconduct.

23

further stated that it was "unreasonable for a person analyzing the presence of gasoline on the shoes and shorts not to consider the diffusing effects of detergent on gasoline." Thus, Saxton contended that trial counsel should have investigated the effects of detergent on gasoline and that they rendered ineffective assistance by failing to do so. We disagree. . . .

[T]he lead trial attorney for Saxton testified that he obtained Larry Dehus, a forensic scientist with whom he had consulted on other trials, as an expert for Saxton's trial.  He informed Dehus of the evidence against his client, including the collection of clothing in the water and detergent filled bathtub.  He also expressed concern to Dehus about the absence of gasoline on the other items present in the bath with the shorts and shoes.  Dehus reviewed the stack of discovery materials provided to the defense by the state, reviewed the physical evidence in the case, conducted an independent inspection and examination of evidence, and reviewed the gas chromatograph printouts.  Dehus also aided in the formulation of cross-examination questions by Attorney [defense attorney] . . . for the state's experts and discussed the possibility of cross-contamination of the clothing found in the bath. . . .

During trial, Dehus testified that he had a Masters in Biology, attended forensic courses at the F.B.I. Academy, was certified in fire origin, investigation and explosions, had taught many courses in criminalistics and forensic science, and had been a forensic scientist since 1974, including ten years of employment with the Miami Valley Regional Crime Laboratory, a full service police crime lab, before starting his own business specializing in forensic work.  Although Dehus and both attorneys for Saxton worked numerous hours preparing for this case, [defense attorney] testified that Dehus never expressed any opinions to him about the effects on gasoline that the detergent may have had.  He also testified that he would have pursued this issue further had Dehus told him about the diffusing effect but that "he relied on his expert advice in that area."

At trial, Dehus testified as to the expectation that gasoline should have been found in other items in the tub, criticized the methods used by law enforcement to collect the evidence, and specifically suggested that these law enforcement officers may well have contaminated the items with gasoline from the crime scene after they were removed from the tub at the defendant's house.  Thus, the difference between Dr. Siegel and Dehus essentially comes down to the fact that Dehus testified that "significant" contamination of gasoline on the shoes and shorts in the tub would be expected to carry over to the other items in the tub, while the affidavit of Dr. Siegel implies that "any" contamination of gasoline on the shoes and shorts in the tub would be expected to have this result.

24

*State of Ohio v. Saxton,* 2004 WL 1488707, *8-12, (Ohio App. 3 Dist.) (July 6, 2004).

Contrary to Saxton's argument, trial counsel did investigate the gasoline found in the water of Saxton's tub. Counsel consulted with Larry Dehus, who provided his expert opinion at trial. The Ohio Supreme Court has found that it is reasonable for counsel to defer to an expert's professional judgment regarding matters within the knowledge of the expert. *State v. McGuire,* 80 Ohio St. 3d 390, 399, 686 N.E.2d 1112, 1121 (1997). Therefore, it was objectively reasonable for Saxton's counsel to rely on the knowledge of Larry Dehus to attack the state's forensic evidence.

Because Saxton fails to demonstrate that trial counsel's performance fell below an objectively reasonable standard, an examination of whether Saxton suffered prejudice is not necessary. Saxton was not deprived of a fair trial by this alleged error.

*(2)     Counsel's failure to procure Bonds for Saxton's trial and for the hearing on the motion for a new trial*

Saxton also argues that trial counsel was ineffective for failing to procure Bonds for trial and for the hearing on the motion for a new trial. Bonds was Saxton's alleged alibi witness. Saxton contends that Bonds was willing to testify that Saxton was with her on the night he allegedly committed the crimes. Saxton argues that counsel was ineffective for failing to make adequate efforts to locate and serve Bonds and for failing to list her as a potential defense witness.

The state appellate court found the following relating to Saxton's hearing for a new trial:

> Shortly before trial Appellant informed his counsel of a potential alibi witness. Because Appellant could only provide a nickname for this witness, his counsel hired a private investigator to identify the witness's true name and her whereabouts. Five days before trial a subpoena was issued in hopes to procure this witness's testimony at trial; however, because Appellant's counsel did not have the correct name or address of the potential witness, the subpoena was issued under the name Denise Bonds instead of Donna Bonds and was not

25

issued to her address.  As such, the witness did not appear at trial.

Thereafter, Appellant's counsel located the witness, and in support of Appellant's motion for a new trial, Appellant's counsel produced two affidavits from Donna Bonds.  The first affidavit stated that Donna was with Appellant at his house on the night of the murder and left out the back door while Appellant was letting his mother in the front door.  The second affidavit was drafted to affirm the first because during the interim between the two affidavits, investigating officers from the Marion Police Department took a certified statement from Donna, indicating that the sworn affidavit she initially gave was false and that she had signed the affidavit without reading it.  At Appellant's hearing for the trial, Donna was called to testify; however, because there was a risk that she may testify contrary to her sworn affidavits, in light of her prior statements to the police, the trial judge afforded her an opportunity to consult with an attorney.  After consultation, she asserted her Fifth Amendment privilege against self incrimination and did not testify.  Furthermore, she stated at the hearing that she would likely assert her Fifth Amendment right in any future proceeding on Appellant's behalf.

While we find that the better practice would have been for defense counsel to seek a continuance in order to procure Donna's appearance at trial, based upon her contradictory statements and her refusal to testify at the new trial hearing, we have no indication from the record as to what her testimony would have been had she appeared and testified.  Without knowing the content of Donna's testimony, or even whether she would have testified, there is no basis for this court to find prejudice and that there is a reasonable probability that the result of the trial would have been different if her testimony had been presented.

Consequently, we find that Appellant's sixth assignment of error is without merit and is hereby overruled..

*Saxton,* 2002 WL 359469, at 13-14.

Saxton contends that counsel was ineffective for failing to secure Bonds before trial.

However, Saxton only informed defense counsel of a potential alibi witness shortly before the trial

began.  Furthermore, because Saxton was unable to provide the name of his alibi witness, counsel

tried to locate Bonds by hiring a private investigator.

As the appellate court concedes, it would have been better had Saxton's attorney asked for

26

a continuance.  But Saxton is unable to show that he was prejudiced by Bonds' failure to appear at his trial.  Counsel secured Bonds for Saxton's hearing on the motion for a new trial, and Bonds refused to testify.  Saxton fails to demonstrate that Bonds would have testified as an alibi witness for him at trial, given that she refused to testify as an alibi witness at his hearing for a new trial.  Thus, he fails to offer clear and convincing evidence to rebut the state appellate court's finding that he did not suffer prejudice from counsel's alleged deficient performance.  Because Saxton does not show that he was prejudiced by counsel's allegedly deficient performance, the magistrate judge recommends that the court overrule his fourth assignment of error.

E.      *Ground five: Alleged improper dismissal of post-conviction petition*

In his fifth ground for relief, Saxton claims that he was denied due process of law and the effective assistance of counsel when the trial court denied his petition for post conviction relief without conducting an evidentiary hearing.  The Sixth Circuit, following various other courts, has determined that a writ of habeas corpus "is not the proper means by which prisoners should challenge errors and deficiencies in state post-conviction proceedings . . . because the claims address collateral matters and not the underlying state conviction giving rise to the prisoner's conviction." *Kirby v. Dutton,* 794 F.2d 245, 247 (6th Cir. 1986).  In Ohio, a post conviction proceeding is "not an appeal of a criminal conviction but, rather, a collateral civil attack on the judgement." *State v. Calhoun*, 86 Ohio St. 3d 279, 283, 714 N.E.2d 905, 909 (Ohio 1999).

Saxton is challenging a proceeding collateral to his state detention rather than the detention itself.  Therefore, the magistrate judge recommends that the court overrule Saxton's fifth ground for relief.

27

IV

For the reasons given above the magistrate judge recommends that the court deny Saxton's

petition for a writ of habeas corpus.


Date:   December 6, 2006                    /s/Patricia A. Hemann
                                           Patricia A. Hemann
                                           United States Magistrate Judge

### **Objections**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See also Thomas v. Arn,* 474 U.S. 140 (1985) reh'g denied, 474 U.S. 1111 (1986).